# Exhibit 9

| | |
|---|---|
| Christopher D. Sullivan (148083) | Walter J. Scott, Jr. (Admitted Pro Hac Vice) |
| Karen K. Diep (305587) | SCOTT LAW GROUP LLP |
| DIAMOND McCARTHY LLP | 3249 Lake Drive |
| 150 California Street, Suite 2200 | Southlake, TX 76092 |
| San Francisco, CA 94111 | P: (214) 755-1978 |
| Phone: (415) 692-5200 | F: (817) 421-3915 |
| Email: csullivan@diamondmccarthy.com | Email: skip@scott-llp.com |
| kdiep@diamondmccarthy.com | |

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco
**08/15/2018**
Clerk of the Court
BY:YOLANDA TABO-RAMI
Deputy Clerk

Attorneys for Woodside Priority, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO

WOODSIDE PRIORITY, LLC,

    Plaintiff,

v.

ANDREA D. McGARY, individually and d/b/a THE McGARY FIRM, and DANIEL P. IANITELLI,

    Defendants.

AND RELATED CROSS-ACTION

Case No. CGC-17-558968

**DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

**Date:** August 29, 2018
**Time:** 9:30 AM
**Dept:** 302

**Complaint Filed:** May 16, 2017
**First Amended Complaint:** August 11, 2017
**Trial Date:** October 15, 2018

I, William F. Garlock, declare as follows:

1. I have been a real estate developer in the San Francisco Bay area for several decades. This declaration is based on my personal knowledge and review of relevant documents. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. I first met Andrew R. Litton ("Litton") in 2002. He was looking to acquire a parking garage that I owned in downtown San Francisco. I was the seller/broker in that parking garage deal.

3. Litton and I got along well together from the outset. He immigrated to the San Francisco area of the United States from the Philippines and invested in a hotel. I was a real estate developer with

Page 1
DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000540

1  a pipeline of opportunities looking for investment. Litton was established within the Filipino community
2  with access to a pool of potential foreign investors looking for investment opportunities.

3       4.    I provided Litton and his counsel, Janet Fogarty, with access to my personal and family-owned financial interests during due diligence on the parking garage deal. Litton and I went over my financial statements together. We discussed them generally and in response to queries by his counsel. We also went together to many of the properties included within my financial portfolio at the time, as well as my home in Atherton and country club at Menlo Circus Club where I rode and kept polo horses. Through it all I introduced Litton to many of my contacts within the San Francisco area business and social community.

       5.    Litton and I got to know each other quite well as a result. He personally accompanied me and saw many of my properties; where, how, and with whom I lived, worked and socialized; and with whom and how I interacted in my business and personal life.

       6.    Litton and I established a compatible relationship that continued and grew over the next several years. He put together investors to fund deals put together by me. This generally involved Litton forming an entity through which his investors provided funding to me or an entity of mine as loans secured by the subject property and personal guarantees by me and my family. In all, Litton and I collaborated in such a manner over the next five years on a half-dozen deals, including what were referred to as:

   (1) Portside
   (2) Genesis
   (3) Brixton Hill
   (4) Vasona
   (5) Electro Pure
   (6) Ledesma
   (7) Woodside

       7.    In addition to the deals Litton ended up doing, he looked at several other deals presented to him by me.

Page 2
DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000541

8. Throughout my dealings with Litton, I maintained financial records detailing my personal and family-owned financial interests in the regular course of business. I maintained these financial records electronically, continually updating them in the regular course of business. I provided Litton continual access to my financial records in order to make and subsequently monitor and manage each of his investments. This included periodic copies of my financial records. Litton also had continual access to my electronically maintained financial records. He had an open invitation to visit my offices to personally access, review, print out, and retain copies of my electronically updated and maintained financial records, and he and I regularly did so together. I also employed Litton's relative, Krissy Ledesma, to help keep him informed about my ongoing operations and to provide him with and facilitate his access to my financial records. I intended Litton to rely on all that he saw and experienced with me in making, monitoring, and managing each of the investments Litton made with me.

9. In 2007 I presented Litton with a project involving three neighboring buildings referred to as Mitten or 839 Mitten in Burlingame, California. Litton had previously formed Woodside Priority in contemplation of another deal that I had proposed on a residential house but decided not to do. He held the funds for that project at my request and used them for the Mitten deal. As with prior deals, Woodside provided partial funding secured by the subject property and personal guarantees by me and my family. And as with prior deals, I provided Litton more information. This included both oral and written information and representations regarding the subject property and its intended use and projected revenues. It also included contemporaneous information about my overall financial condition—both as printed out for him and otherwise made available to him and reviewed with me electronically. This included information about Pulgas and Orville, two other projects I was working on at the same time as Woodside. My financial records were as always electronically updated to include information about them as part of those deals and my overall position. Litton and I discussed as we always did what I was doing with both those projects and how they fit financially and whatnot with everything else going on including Woodside. Litton even helped introduce me to a Filipino banker contact of his at Bank of the Orient who I worked with on Orville. I knew the cumulative oral and written information and representations I provided to Litton were important and intended as always for him to rely on them.

Page 3
DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000542

10.    The cumulative and contemporaneous oral and written information I provided Litton in furtherance of the Woodside deal was all wrong. It misrepresented the state of my financial position and condition in at least the following material respects:

(1) the information presented was inaccurately prepared and presented by "the seat of [the] pants" without due care and attention in a "far too optimistic" manner under the prevailing circumstances;

(2) the "'seat of the pants' wasn't very good";

(3) there were "numerous mistakes" as a result;

(4) property values were consistently and systematically overstated;

(5) property rental income was likewise consistently and systematically overstated;

(6) liabilities were likewise misrepresented and consequently understated;

(7) my personal income and net worth was as result substantially overstated;

(8) the financial information provided both orally and in writing accordingly was as a whole woefully inaccurate and altogether misrepresented;

(9) as the FBI correctly pointed out there were "mathematical error[s] ... made in providing the ownership interest and consequently the net worth associated with a couple of specific ... projects" that resulted in an overall overstatement of my financial condition;

(10) this included an overstatement of the ownership interest in Garlock's Pulgas project where "[Garlock] had sold out more of that position than ... shown in the financials";

(11) the ownership interest in Pulgas accordingly was overstated by twice its actual amount;

(12) the commission income attributed to Pulgas was likewise overstated by twice its actual amount;

(13) the valuation of Pulgas was overstated as a result tenfold as "600,000" when "it was only 60,000";

(14) the discrepancies correctly identified by the FBI resulted in an aggregate overstatement of "[a] million or two million";

(15) short term debt obligations were misstated and substantially understated my overall financial position and condition;

(16) funding from the Bank of the Orient on my Orville project was not properly

Page 4
DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000543

presented as a short-term loan;

(17) property was thus presented as being less encumbered than it was;

(18) while also overstating cash flow and net worth;

(19) a nonexistent easement was attributed to my Orville project;

(20) revenues attributed to the easement were as a result altogether misstated and overstated;

(21) the valuation of the Orville property accordingly was substantially overstated, in turn, by two million dollars;

11. The foregoing misrepresentations were included in the cumulative and contemporaneous oral and written information I provided Litton prior to and in furtherance of the Woodside deal, either electronically or in computer printouts, or both. Rightly or wrongly, I intended Litton to rely on them in doing the Woodside deal and regrettably deceived him.

12. The Woodside deal included a series of transactions. The deal was originally consummated at the end of December 2007. As in other deals, I acted as a broker in the deal. I then refinanced the project and there was a second closing in April 2008. Then Woodside took a deed in lieu of foreclosure in May 2008.

13. In September 2009, Woodside and I along with my family and several family-owned entities were named as defendants in a case filed by Bridge Bank over the Mitten property. Woodside ended up claiming against me, my family, and family entities and we eventually settled. I paid $200,000 or whatever the number we gave to get my son Jason off the hook and agreed to a judgment for the rest. I wanted to do right by Litton and reach an agreement irrespective of the case. So I did not really disagree with or even mind agreeing to the judgment because Litton and I had a good run for several years and just prior to that I had made for myself and some investors about $6,000,000 on a transaction that closed the end of 2011. We paid a lot of bills with that, including whatever the number we gave to get Jason off the hook. And I am an optimist and I always felt that we could take what we had and the deals we were left with and I could rework those to make it all work. So I wanted to make Litton whole. I knew it involved his family just like mine. And I wanted to make it up to him.

Page 5
DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000544

14. After I settled with Litton some other people tried to place me into bankruptcy. I fought it and had it dismissed but it was reinstated again. Litton then filed a case against me in the bankruptcy. I was surprised. I have always suspected his lawyers put him up to it, but it upset me because I wanted to make it right and had cooperated to that end already in agreeing to the judgment and fighting the bankruptcy. I did not understand why Litton felt the need to go to court again. Litton and I had always worked things out before. I was not trying to get out of anything with him. I would have stood by my agreement because I never intended to seek bankruptcy (and had fought it) or otherwise avoid or walk my agreement.

15. When Litton filed against me again I was basically my own lawyer and more or less just did my best to contest whatever Litton's lawyers were saying. Eventually I had a lawyer, too, but he did not really have to do much because there was not much that we ever had to do. Even when it went to court I was not asked to do anything because the judge dismissed the case or whatever without my lawyer ever having to do anything.

16. I understand that the Woodside judgment is discharged. As odd as it may sound, I am sorry for that. The bankruptcy was forced on me, and then the case was forced on me by Litton or his lawyers.

17. I have been reminded and recall that there was a document presented to when I agreed to settle with Litton that included language about bankruptcy. I did not plan on bankruptcy so it really did not matter to me. I understood it basically said I could not avoid or discharge the judgment in bankruptcy. That was fine with me because I did not intend to. A friend and former attorney of mine, George Eshoo, called me while I was sitting in a room waiting for everyone else. I went over the document with him more or less and he told me to just strike out the bankruptcy stuff and at least bluff or pretend to oppose it and see if anyone insisted on it. So I did.

18. I would have honored my deal and paid the judgment as agreed. Maybe not by now and

Page 6
DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000545

not all at once, but in time. As indicated, I had a $6,000,000 deal close just before I agreed to settle; I was successful before and continue to earn today; and many of the deals that got caught up in the craziness during the financial crises are successful today.

19. I believe that if not for the lawyers, Litton and I would have worked things out.

WG-0000546

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed this 13th day of August, 2018 at San Francisco, San Francisco County, California.

_____
Declarant

Page 8

DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000547

| | |
|---|---|
| Christopher D. Sullivan (148083) <br> Karen K. Diep (305587) <br> DIAMOND McCARTHY LLP <br> 150 California Street, Suite 2200 <br> San Francisco, CA 94111 <br> Phone: (415) 692-5200 <br> Email: csullivan@diamondmccarthy.com <br> kdiep@diamondmccarthy.com <br><br> Attorneys for Woodside Priority, LLC | Walter J. Scott, Jr. (Admitted Pro Hac Vice) <br> SCOTT LAW GROUP LLP <br> 3249 Lake Drive <br> Southlake, TX 76092 <br> P: (214) 755-1978 <br> F: (817) 421-3915 <br> Email: skip@scott-llp.com |

ELECTRONICALLY
**FILED**
Superior Court of California,
County of San Francisco

**08/30/2018**
Clerk of the Court
BY: YOLANDA TABO-RAMII
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO

| | |
|---|---|
| WOODSIDE PRIORITY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ANDREA D. McGARY, individually and d/b/a THE McGARY FIRM, and DANIEL P. IANITELLI, <br><br> Defendants. <br><br> AND RELATED CROSS-ACTION | Case No. CGC-17-558968 <br><br> **SUPPLEMENTAL DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** <br><br> Date: August 29, 2018 <br> Time: 9:30 AM <br> Dept: 302 <br><br> Complaint Filed: May 16, 2017 <br> First Amended Complaint: August 11, 2017 <br> Trial Date: October 15, 2018 |

I, William F. Garlock, declare as follows:

1. Further to my prior declaration dated August 13, 2018, if I were called upon to testify, I would testify that I intended to deceive Andrew R. Litton and Woodside Priority, LLC by the false and misleading cumulative and contemporaneous oral and written information I made and provided them in furtherance of the Woodside deal regarding the 839 Mitten property in Burlingame, California, including, but not limited to, the misrepresentations delineated in paragraph 10 of my August 13, 2018 Declaration.

Page 1
SUPPLEMENTAL DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000548

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed this 29th day of August, 2018 at San Francisco, San Francisco County, California.

_____
Declarant

8/29/18

Page 2
SUPPLEMENTAL DECLARATION OF WILLIAM F. GARLOCK IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

WG-0000549